UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHELE COOPER,                                    Case No. 20-11855

                          Plaintiff,               Judith E. Levy
          v.                                       United States District Judge

ANDREW SAUL                                        Curtis Ivy, Jr.
COMMISSIONER OF SOCIAL                             United States Magistrate Judge
SECURITY,

                          Defendant.
_____/

## REPORT AND RECOMMENDATION
## CROSS-MOTIONS FOR SUMMARY JUDGMENT (ECF Nos. 12, 13)

On July 8, 2020, plaintiff Michele Cooper ("Plaintiff") commenced the

instant action pursuant to 42 U.S.C. § 405(g), challenging the final decision of

Defendant Andrew Saul, Commissioner of Social Security ("Commissioner")

denying her application for disability insurance benefits and supplemental security

income under the Social Security Act (the "Act").  (ECF No. 1).  This matter is

before the United States Magistrate Judge for a Report and Recommendation on

Plaintiff's motion for summary judgment (ECF No. 12), the Commissioner's cross-

motion for summary judgment (ECF No. 13) and the administrative record (ECF

No. 10).  Cooper also filed a reply in support of her motion for summary judgment.

(ECF No. 14).

For the reasons that follow, it is **RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary judgment (ECF No. 12), **GRANT** Defendant's motion for summary judgment (ECF No. 13), and **AFFIRM** the Commissioner's decision.

## I.    DISCUSSION

### A.    Background and Administrative History

On January 3, 2018, Plaintiff filed an application for a period of disability and disability insurance benefits.  (ECF No. 10, PageID.50, 218).  On January 16, 2018, Plaintiff submitted an application for supplemental security income, alleging disability beginning on October 15, 2017.  (*Id.*).  She identified the following impairments as limiting her ability to work: back impairment, hand problems, and numbness in feet and pain as limiting her ability to work.  (*Id.* at PageID.258).  Her claims were initially denied on March 5, 2018.  (*Id.* at PageID.143 and 151).  She then requested a hearing and appeared on April 24, 2018 before Administrative Law Judge ("ALJ") Kevin W. Fallis.  (*Id.* at PageID.70-114).  Michele Robb, a vocational expert ("VE"), testified in the matter.  (*Id.* at PageID.99-114).  On May 30, 2019, ALJ Fallis issued an opinion, which determined that based (i) on the application of disability and disability insurance benefits protectively filed on January 3, 2018, Plaintiff was not disabled under sections 216(i) and 223(d) of the Act and (ii) on the application for supplemental security income filed on January

16, 2018, Plaintiff was not disabled under section 1614(a)(3)(A) of the Act.  (*Id.* at PageID.62).

Plaintiff submitted a request for review of the hearing decision on July 11, 2019.  (*Id.* at PageID.212).  On May 21, 2020 the Appeals Council denied Plaintiff's request for review.  (*Id.* at PageID.39).  Thus, ALJ Fallis's decision became the Commissioner's final decision.  Plaintiff timely commenced the instant action on July 8, 2020.  (ECF No. 1).

**B.     Plaintiff's Medical History**

At the alleged disability onset date, Plaintiff was 51 years old.  (ECF No. 10, PageID.60).  She has at least a high school education and is able to communicate in English.  (*Id.*).  At various points, prior to the alleged onset date, she worked as a production worker, housekeeper and bartender.  (*Id.* at PageID.60).  While Plaintiff did work after the alleged onset date, none of the activity rises to the level of substantial gainful activity ("SGA") and thus ALJ Fallis found she has not engaged in SGA since October 15, 2017.  (*Id.* at PageID.53, 74).  When filing for disability, Plaintiff "alleged her ability to work was limited due to back impairment, hand problems, [and] numbness in feet and pain."  (*Id.* at PageID.56).  Due to her alleged conditions, Plaintiff reported she stopped working on August 30, 2017. (*Id.*).

### 1. Plaintiff's Degenerative Disc Disease

On March 22, 2017, an X-ray of Plaintiff's lumbar spine was conducted. (*Id.* at PageID.376). The results showed "there [was] mild disc narrowing and facet arthritis at L4-L5 and L5-S1. The vertebral body heights [were] maintained. [And] there [was] no subluxation." (*Id.*). Dr. Anthony Bennett's impression of Plaintiff's X-ray was there was "[m]ild degenerative change of lower lumbar spine." (*Id.*). On April 5, 2018, an X-ray of her cervical spine was performed. (*Id.* at PageID.508). The results showed "[t]here [was] disc space narrowing with subjacent vertebral endplate sclerosis and osteophytes to spur formation at C4-C5 and C5-C6. There [was] reversal of the mid lordotic curve. [And] [t]here [was] no subluxation." (*Id.* at PageID.508). Dr. Anthony Bennett's impression of Plaintiff's X-ray was there was "[l]imited, degenerative change [of] mid and lower cervical spine with reversal of the mid lordotic curve." (*Id.*). She was prescribed Cyclobenzaprine and Mobic for her history of degenerative disc disease of the lumbar and cervical spine. (*Id.* at PageID.57).

### 2. Plaintiff's Back Pain

The medical records indicate Plaintiff was prescribed Norco and Norvasc to aid with the pain associated with her back. (*Id.* at PageID.339, 342-344, 347). On July 24, 2017, she complained of worsening back pain and on January 26, 2018 she requested physical therapy to help ameliorate the pain she was experiencing. (*Id.*

4

at PageID.57, 371, 462-469).  Therapy commenced on May 1, 2018 and, as

assessed by her physical therapist, Plaintiff reported her average neck and back

pain was 8/10.  (*Id.* at PageID.462, 464, 494).  She also reported her best pain level

as 6/10 and her worst as 10/10.  (*Id.* at PageID.462).  However, Plaintiff missed

three consecutive sessions before returning to the facility on May 31, 2018.  (*Id.* at

PageID.464).  She attended a total of four scheduled physical therapy sessions and

failed to appear for five.  (*Id.* at PageID.469).  During her final session, the

physical therapist noted that her pain was better and she was a "[l]ittle more

flexible. . . ."  (*Id.* at PageID.465).  Plaintiff also suffers from cataracts, glaucoma,

depression and headaches.  (*Id.* at PageID.53, 56).

       3.  <u>Plaintiff's Headaches</u>

Plaintiff began complaining of headaches during May 2018 which she

described as occipital.  (*Id.* at PageID.500).  The headaches are typically triggered

by eyestrain, related to her glaucoma, when she reads.  (*Id.* at PageID.78-79).

They occur approximately twice a week and if she takes her medication, they last

for two hours on average.  (*Id.* at PageID.77-78).  On May 30, 2018, Dr. Al-Qasmi

performed an occipital nerve block for cervicogenic headaches.  (*Id.* at

PageID.501).  Thereafter, he recommended Plaintiff continue with Neurontin at the

same dose level.  (*Id.*).  In August 2018, the claimant continued to complain of

headaches.  An orbital MRI study showed a stable area of encephalomalacia within

the posterior right parietal lobe consistent with remote infraction. (*Id.* at PageID.486-87).

### C.     The Administrative Decision

Pursuant to 20 C.F.R. § 404.1520(b), at Step 1 of the sequential evaluation process, ALJ Fallis found Plaintiff had not engaged in SGA since October 15, 2017, the alleged onset date. (*Id.* at PageID.53). Although Plaintiff performed work after the alleged disability onset date, this work activity did not rise to a level that qualifies as SGA. (*Id.*). At Step 2, ALJ Fallis found that from October 15, 2017 through the date of the decision, Plaintiff had the following severe impairments: cerebral vascular accident, degenerative disc disease of the lumbar and cervical spine, and headaches. (*Id.*). Further, ALJ Fallis concluded Plaintiff's glaucoma, cataracts and depression all qualified as non-severe impairments. (*Id.* at PageID.54-55). Based on the record ALJ Fallis found Plaintiff's (i) degenerative disc disease did not meet or medically equal section 1.04; (ii) cerebral vascular accident failed to meet or medically equal the requirements of listing 11.04; and (iii) experiences with headaches failed to meet the requirement of any relevant listing under Section 11.00-Neurological. (*Id.* at PageID.55-56). Between Steps 3 and 4 of the sequential process, he evaluated Plaintiff's residual functional capacity

("RFC")[1] and determined Plaintiff had the RFC

> to perform light work as defined in 20 CFR 404.1567(b)
> and 416.967(b) except she can occasionally perform foot
> control operations; never climb ladders, ropes, or
> scaffolds; occasionally climb ramps or stairs;
> occasionally balance, stoop, kneel, crouch, and crawl; she
> must avoid concentrated exposure to wetness; she must
> avoid concentrated use of hazardous moving machinery;
> and she must avoid all exposure to unprotected heights.
> This work would be limited to simple, routine, repetitive
> tasks performed in a work environment free of fast-paced
> production requirements involving only simple,
> work-related decisions and routine workplace change.

(*Id.* at PageID.56).  At Step 4, ALJ Fallis determined that transferability of job

skills was not material to the determination of Plaintiff's disability because "using

the Medical-Vocational Rules as a framework supports a finding that the claimant

is 'not disabled,' whether or not the claimant has transferable job skills."  (*Id.* at

PageID.60).  At Step 5, considering Plaintiff's age, education, work experience, the

VE's testimony and RFC, the ALJ determined there are a significant number of

jobs in the national economy that Plaintiff can perform.  (*Id.*).

### D.    Arguments

#### 1.  Plaintiff's Claims of Error

Plaintiff filed her motion for summary judgment on November 28, 2020.

---

[1] The claimant's RFC is an assessment of the most the claimant can do in a work setting despite his or her physical or mental limitations.  20 C.F.R. §§ 404.1545(a), 416.945(a); *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002).

(ECF No. 12).  She raises two main points in her brief – ALJ Fallis's RFC is deficient as he failed to consider the functionally limiting effects of all of her severe impairments, and he failed to establish the existence of a significant volume of jobs in the national economy.  (*Id.* at PageID.556-57).

First, Plaintiff argues ALJ Fallis failed to consider the functionally limiting effects of all of Plaintiff's severe impairments while assessing her RFC.  (*Id.* at PageID.556).  She represents that while ALJ Fallis found her degenerative disc disease of the cervical spine was a severe impairment, his RFC assessment failed to consider "the limitations in range of motion found by the physical therapist as well as the opinion of Dr. [Jane] Johnson[2] regarding [ ] Plaintiff's functional capacity."  (*Id.* at PageID.560-61).  Further, she purports ALJ Fallis's RFC made no accommodation for her headaches which he found qualified as a severe impairment.  (*Id.* at PageID.561).  ALJ Fallis found that due to her headaches and the confusion she had been experiencing since her stroke[3], she was "limited to

---

[2]  Dr. Jane Johnson is one of Plaintiff's treating physicians who provided a medical source statement regarding her condition.  (ECF No. 12, PageID.559, *see e.g.,* ECF No. 10, PageID.494-96).

[3]  On or about February 6, 2018, approximately four months after her alleged onset date, Plaintiff suffered a stroke.  (ECF No. 10, PageID.90, 415, 430).  Although ALJ Fallis mentioned Plaintiff's stroke in his analysis, this medical event is not relevant for this Court's review.  For medical evidence from Plaintiff's stroke to be relevant, it must relate back to her condition prior to the alleged disability onset date. *Wirth v. Comm'r of Soc. Sec.*, 87 F. App'x 478, 480 (6th Cir. 2003).  In this case, the injuries plaintiff suffered in relation to the stroke did not exist until on or after February 6, 2018.  (ECF No. 10, PageID.90, 415, 430).  Thus, they have nothing to do with whether she was disabled prior to that date.  If a new impairment later disables the claimant, a

simple, routine, repetitive tasks performed in a work environment free of fast

paced production requirements involving only simple, work related decisions and

routine workplace changes."  (*Id.* at PageID.562).  Plaintiff argues despite this

finding, ALJ Fallis failed to create an accurate and logical bridge between the

functional limitations outlined in his finding and Plaintiff's headaches.  (*Id.* at

PageID.562-63).  Thus, Plaintiff purports ALJ Fallis's finding at step 5 of the

analysis is not supported by substantial evidence as it is based upon his deficient

RFC determination.  (*Id.* at PageID.563).  Second, Plaintiff maintains ALJ Fallis

failed to establish the existence of work, in significant numbers, she could perform

as the testimony he relied upon, provided by VE Robb during the hearing, was

inconsistent with the provisions of the Dictionary of Occupational Titles ("DOT")

and its companion volumes.  (*Id.* at PageID.557, 563).

2. Commissioner's Motion for Summary Judgment

The Commissioner filed a motion for summary judgment on December 30,

2020.  (ECF No. 13).  The Commissioner contends (i) Plaintiff's proposition that

ALJ Fallis rejected Dr. Johnson's medical opinion is unsupported and undermined

by the fact that Dr. Johnson herself found Plaintiff had normal range of motion in

---

new period of disability must be established.  *See* Program Operations Manual System (POMS) DI 28005.210(C); *Sullivan v. Astrue*, 2012 WL 5361039, at *3 (E.D. Ky. Oct. 30, 2012).

her neck;[4] (ii) Plaintiff failed to clarify what additional steps ALJ Fallis was

required to undertake to properly account for her headache-related limitations; and

(iii) Plaintiff cannot object to VE Robb's testimony as this right has been waived

due to her failure to do so during the hearing.  (*Id.* at PageID.583-84).

As to Plaintiff's first argument, the Commissioner counters that ALJ Fallis

did consider Dr. Johnson's medical opinions regarding the condition of Plaintiff's

neck when conducting Plaintiff's RFC analysis.  (*Id.* at PageID.589-90).  The

Commissioner highlights that the medical record reveals that in February 2018 Dr.

Johnson's notes indicate Plaintiff's neck had normal range of motion and no

rigidity.  (*Id.* at PageID.590; ECF No.10, PageID.432).  Further, X-rays conducted

in March 2018 show only "limited degenerative change[s] [of the] mid and lower

cervical spine with reversal of the mid lordotic curve." (ECF No. 10, PageID.508;

ECF No. 13, PageID.590).  In light of these medical records, the May 2018 note

Plaintiff references, although a snapshot of Plaintiff's functioning ability, could not

serve as the sole and defining basis for a disability finding.  (ECF No. 13,

PageID.591).

As to Plaintiff's second argument, the Commissioner argues ALJ Fallis was

not required to "specifically assign functional limitations to each impairment and

---

[4] Defendant tailored his response to Plaintiff's first argument regarding ALJ Fallis's RFC to only address her ability to move her neck and head.  (ECF No. 13, PageID.587).

address them individually." (*Id.* at PageID.591-92).  Further, finding the existence

of a condition does not automatically establish a functional limitation or disability.

(*Id.* at PageID.592).  Lastly, merely stating that ALJ Fallis's RFC is lacking is not

sufficient as it is Plaintiff's burden to prove that a more restrictive RFC is

appropriate and her papers fail to state the additional terms or factors ALJ Fallis's

RFC should have included to account for Plaintiff's headaches.  (*Id.*).

As to Plaintiff's third argument, the Commissioner argues ALJ Fallis was

only obligated to ask VE Robb if her testimony was consistent with the DOT and

receive an affirmative response.  (*Id.* at PageID.595).  Further, Plaintiff waived her

opportunity to object to VE Robb's testimony by declining to do so during the

hearing.  (*Id.* at PageID.595-96).

### 3. Plaintiff's Reply

Plaintiff filed her reply to Defendant's motion for summary judgment on

January 13, 2021.  (ECF No. 14).  In response to Defendant's motion, Plaintiff

argues (i) ALJ Fallis could have included a requirement for rest periods to address

Plaintiff's headaches (ECF No. 14, PageID.600); (ii) Plaintiff did not waive her

ability to challenge VE Robb's inconsistent testimony as courts have found when

there is a direct and obvious conflict in a VE's testimony "it cannot be waived by

failure to raise it at the administrative level" (*Id.* at PageID.602); and (iii) ALJ

Fallis's acceptance of VE Robb's testimony that no conflict existed was not

sufficient to satisfy his duty to inquire about conflicts (*Id.* at PageID.603).

Further, Plaintiff reiterated ALJ Fallis's decision was not supported by substantial evidence as he failed to "incorporate functional limitations related to Plaintiff's severe impairments into his RFC determination" and "establish the existence of other work, in significant numbers, which [Plaintiff] can perform, considering the RFC which the ALJ found to exist."  (*Id.* at PageID.604).

## E.    Framework for Disability Determinations

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) has a severe impairment; (3) has an impairment that meets or medically equals the requirements of an impairment listed in the regulations; (4) can return to past relevant work; and (5) if not, whether he or she can perform other work in the national economy.  20 C.F.R. §§ 404.1520, 416.920. The plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the Plaintiff's impairment, he retains the RFC to perform specific jobs existing in the

national economy." *Richardson v. Sec'y of Health & Human Servs.*, 735 F.2d 962, 964 (6th Cir. 1984).

### F.    Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . .")).  Under this standard, "substantial evidence is defined as '*more than a scintilla of evidence but less than a preponderance*; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)(emphasis added)).  In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the

reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

The Court's review is limited to an examination of the record only. *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human*

*Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). Neither the ALJ nor the Court is required to discuss every piece of evidence contained in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 F. App'x 521, 526 (6th Cir. 2006).

### G.    Analysis and Conclusion

  1.    <u>ALJ Fallis Appropriately Analyzed and Considered Dr. Johnson's Medical Opinion Statement</u>

When ALJ Fallis's decision is read as a whole, as it should be, it suggests that he reviewed, considered, and analyzed Dr. Johnson's medical opinion in addition to the remaining portions of the medical record. *Helton v. Berryhill*, 2018 WL 5986747 at *3 (E. D. Ky. Nov. 14, 2018) (plaintiff's contention that the ALJ failed to consider whether her headaches were a severe impairment was not supported by review of the ALJ's entire written decision). Although Dr. Johnson's June 25, 2018 medical source statement contains notations that demonstrate Plaintiff had some functional limitations as of May 2018, the medical record as a whole contains substantial evidence to support ALJ Fallis's finding that these

functional limitations are not sufficient to declare Plaintiff disabled under the Act. *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir.1986).

ALJ Fallis included a thorough discussion outlining the points included in Dr. Johnson's medical source statement and then highlighted the remaining portions of the record which contradicted and called Dr. Johnson's statement into question.  (ECF No. 10, PageID.59).  Notably, portions of the contradictory records include medical notes from 2017 to early 2018 prepared by Dr. Johnson as well as other medical professionals.  (*Id.*).  These records hint Plaintiff's neck had a normal range of motion and that overall Plaintiff's conditions were not as severe as represented in Dr. Johnson's statement.  For example, a May 25, 2017 Valley Medical Center medical record indicated while Plaintiff was experiencing a number of issues they were all continuous and the severity was mild; there was no notation of neck stiffness or limited range of motion in the neck or extremities. (*Id.* at PageID.356, 358).  A July 24, 2017 Valley Medical Center medical record, signed by Dr. Johnson, reflected although Plaintiff went to the office for a "routine follow up for worsening lower back pain," the illnesses she complained of were once again continuous in general and the severity was mild.  (*Id.* at PageID.360). Further, the medical record indicated once again her neck had a normal range of motion.  (*Id.* at PageID.362).  An October 27, 2017 Valley Medical Center medical

record indicates Plaintiff visited the office for a routine medication refill and her

neck range of motion and extremity examinations were both normal.  (*Id.* at

PageID.366-68).  Notably, this routine visit occurred almost two weeks after the

alleged disability onset date.  (*Id.* at PageID.115).

     Lastly, the objective testing conducted by the Comprehensive Pain

Specialists reveal only mild findings in relation to Plaintiff's conditions.  (*Id.*at

PageID.519-531).  The medical professional found Plaintiff had a functional range

of motion in the lower extremities, her cervical lordosis and lumbar lordosis

appeared normal, there were no deformities noted in the extremities and she scored

fairly well on the manual muscle strength test.  (*Id.* at PageID.523-24).  While the

records associated with Plaintiff's medical visits indicate she  described the pain as

constant and at its best and worst as a 10 out of 10, based on ALJ Fallis's review of

the record, Plaintiff's assertions were not necessarily supported by the medical

professional's findings.  (*Id.* at PageID.521, 523-24).  While ALJ Fallis is required

to review the entire record, he is not required to accept Plaintiff's subjective claims

when he identifies contradictions among medical reports.  *Jones v. Comm'r of Soc.*

*Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a

claimant's subjective complaints and may . . . consider the credibility of a claimant

when making a determination of disability."); *Walters v. Comm'r of Soc. Sec.*, 127

F.3d 525, 531 (6th Cir. 1997) ("Discounting credibility to a certain degree is

appropriate where an ALJ finds contradictions among medical reports, claimant's

testimony, and other evidence.").  In instances such as this where there is

substantial evidence to support the ALJ's decision, "this Court defers to that

finding 'even if there is substantial evidence in the record that would have

supported an opposite conclusion.'"  *Blakley*, 581 F.3d at 406 (quoting *Key v.*

*Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

As discussed above, ALJ Fallis highlighted examples of substantial evidence

that did not support Plaintiff's claims of disability or Dr. Johnson's medical source

statement.  Thus, based on the undersigned's review of ALJ Fallis's analysis and

the record, although Dr. Johnson's June 25, 2018 medical source statement

includes numerous statements regarding limitations Plaintiff was experiencing, the

contemporaneous medical records created around the time Plaintiff alleges her

disability began support ALJ Fallis's finding that Plaintiff does not qualify as

disabled under the Act.

2.  <u>ALJ Fallis Considered and Incorporated the Appropriate</u>
<u>Limitations Associated with Plaintiff's Headaches</u>

Plaintiff further maintains ALJ Fallis's RFC was deficient as it made no

accommodation for her headaches which he found qualified as a severe

impairment.  (ECF No. 12, PageID.561).  Contrarily, during his analysis, ALJ

Fallis found that due to Plaintiff's headaches and the confusion she had been

experiencing since her stroke, she was "limited to simple, routine, repetitive tasks

performed in a work environment free of fast paced production requirements involving only simple, work related decisions and routine workplace changes." (ECF No. 10, PageID.59-60).  Notwithstanding this finding, Plaintiff contends ALJ Fallis failed to establish an accurate and logical bridge between the functional limitations outlined in his finding and Plaintiff's headaches.  (ECF No. 12, PageID.562-63).

Plaintiff's argument fails as she did not identify any underlying medical records that support the inclusion of a more detailed functional limitation in relation to her headaches in ALJ Fallis's RFC.  *Hoffman v. Comm'r of Soc. Sec.*, 2019 WL 5663425 at *5 (E.D. Mich. Sept. 25, 2019) (finding plaintiff's argument that ALJ's headache-related limitation was insufficient as plaintiff failed to identify a medical source who attributed additional specific functional limitations not already addressed by the ALJ).  Further, Plaintiff's suggestion that the ALJ could have included a headache-related limitation providing Plaintiff with rest periods twice a week for two hours is unpersuasive as there is nothing in the medical record or Plaintiff's testimony to support the notion that this limitation would in fact address Plaintiff's condition.  Moreover, Plaintiff testified that she experiences the headaches "maybe twice a week" and if she takes her prescription medication the headache will "last maybe two hours."  (ECF No. 10, PageID.77-78).  The testimony does not provide enough concrete information to allow ALJ

19

Fallis to craft a more restrictive headache-related limitation.  Furthermore, Plaintiff's suggested limitation is too restrictive while ALJ Fallis's functional limitation is broad enough to allow Plaintiff to fashion the appropriate additional parameters necessary to address her headaches with any  potential employer.

Similar to the ALJ in *Viera v. Comm'r of Soc. Sec.*, ALJ Fallis appropriately considered the state agency medical consultant's opinion when crafting the RFC. 2019 WL 8750418 at *4-5 (E.D. Mich. Oct. 25, 2019).  The inclusion of the additional limitations, that were even more restrictive than those recommended by the state agency, demonstrate ALJ Fallis's intention in crafting a detailed and tailored RFC that would specifically address Plaintiff's conditions.  (ECF No. 10, PageID.58-59).  In his decision, ALJ Fallis noted  "greater limitations [were] warranted by the imaging studies evidencing degenerative changes of the lumbar and cervical spine, examination findings of tenderness to the lumbar spine and paraspinal musculature, and diagnostic evidence of encephalomalacia as a result of a cerebral vascular accident."  (*Id.* at PageID.59).

Thus, after reviewing the medical record and Plaintiff's testimony, ALJ Fallis fashioned an RFC that specifically incorporated an accommodation for Plaintiff's intermittent headaches.  *Viera*, 2019 WL 8750418 at *4 .  Pursuant to the aforementioned authorities, the undersigned finds Plaintiff's argument regarding the headache-related limitations fails.

3.      Plaintiff Waived Her Right to Challenge VE Robb's Testimony

Plaintiff argues ALJ Fallis failed to establish the existence of work, in significant numbers, she could perform as VE Robb's testimony, which ALJ Fallis relied upon, was either inconsistent with the provisions of the DOT and its companion volumes or conflicted with ALJ Fallis's RFC assessment.  (ECF No. 12, PageID.557, 563).  Plaintiff also purports ALJ Fallis failed to fulfill his obligation to confirm no conflicts in the VE's testimony existed.  (*Id.* at PageID.565-66).  The Commissioner counterargues Plaintiff waived her opportunity to object to VE Robb's testimony by declining to do so during the hearing.  (ECF No. 13, PageID.595-96).  Further, the Commissioner asserts ALJ Fallis was only obligated to ask VE Robb if her testimony was consistent with the DOT and receive an affirmative response.  (*Id.* at PageID.595).

During the hearing, ALJ Fallis afforded Plaintiff an opportunity to cross examine VE Robb, which she declined.  (ECF No. 10, PageID.111-12).  It is settled law in our district that a "claimant's failure to object to testimony offered by a vocational expert, at the time of the administrative proceeding waives, the claimant's right to raise such issues in the district court."  *McCarley v. Berryhill*, 2018 WL 1477668, at *2 (E.D. Mich. Mar. 27, 2018) (holding plaintiff was prohibited from challenging the VE's testimony at the district level as she failed to object to the VE's testimony during the hearing or raise the possibility that it

21

conflicted with the DOT) (citing *Lyon v. Comm'r of Soc. Sec.*, 2013 WL 1149967,

at *4 (W.D. Mich. Mar. 19, 2013)); *Mason v. Comm'r of Soc. Sec.*, 2019 WL

7631716, at *5 (E.D. Mich. Oct. 4, 2019) (holding plaintiff waived any objection

to the alleged conflict between the DOT and the VE's testimony as he neither

objected nor cross-examined the VE during the hearing ); *Zorn v. Comm'r of Soc.*

*Sec.*, 2015 WL 5545257, at *4 (E.D. Mich. Sept. 18, 2015) (holding that by

declining to cross examine the VE plaintiff waived her objections and there were

"no grounds for relief based on either inaccuracies of the VE's testimony or a

conflict between the VE's testimony and the DOT.").  Thus, the undersigned finds

Plaintiff waived her objection to the VE's testimony and any alleged

inconsistency[5] by failing to cross examine VE Robb during the hearing.

Further, ALJ Fallis was not obligated to investigate the accuracy of VE

Robb's testimony.  *Campbell v. Comm'r of Soc. Sec.*, 2013 WL 823377, at *6

(E.D. Mich. Feb. 13, 2013).  Pursuant to SSR 00-4p, ALJs have an affirmative duty

to ask the VE if the evidence they have provided conflicts with information

contained in the DOT.  *Id.*  Before questioning VE Robb, ALJ Fallis inquired:

> "Ms. Robb, I do find you to be a vocational expert for
> this case.  I'll assume your testimony is based upon your

---

[5] *Arguendo*, even if the Court were to address VE Robb's testimony in relation to the DOT, Plaintiff would still lose as "ALJs may 'take administrative notice of reliable job information available from the *Dictionary of Occupational Titles*,' but the 'Social Security regulations do not obligate the ALJ and consulting vocational experts to rely on the Dictionary's classifications.'"  *McCarley*, 2018 WL 1477668 at *3.

> knowledge, education, training, and experience, and
> consistent with the DOT, unless you tell me otherwise.
> All right?"

(ECF No. 10, PageID.100). VE Robb responded affirmatively and ALJ Fallis

proceeded to question her. (*Id.*). ALJ Fallis was obligated to do no more.

*Campbell*, 2013 WL 823377 at *7. Rather, Plaintiff was duty-bound to cross

examine and uncover any potential conflicts contained in VE Robb's testimony.

*Id.* Therefore, Plaintiff's argument that ALJ Fallis failed to fulfill his obligation to

confirm no conflicts existed in VE Robb's testimony is unpersuasive.

### G. Conclusion

Plaintiff has the burden of proof on her statements of error. *Walters,*127

F.3d at 529. Plaintiff has not shown legal error that would upend the ALJ's

decision. For the foregoing reasons, it is **RECOMMENDED** that the Court

**DENY** Plaintiff's motion for summary judgment (ECF No. 12), **GRANT**

Defendant's motion for summary judgment (ECF No. 13), and **AFFIRM** the

Commissioner of Social Security's decision.

## II. PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and

Recommendation, but are required to file any objections within 14 days of service,

as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule

72.1(d). Failure to file specific objections constitutes a waiver of any further right

of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: April 26, 2021                         s/Curtis Ivy, Jr.
                                             Curtis Ivy, Jr.
                                             United States Magistrate Judge